Good morning, Counsel. Good morning, Your Honor. How are you? Pleased to court. Nicholas Voiland representing the plaintiffs in this case. Before we start you, let's put him back to 15, before we start I just want to know as a matter of housekeeping, are all four of you going to be making presentations on the defense side? Three out of four, Your Honor. I'm going to take 10 minutes on the clerks. I'll go in the morning. Good morning. We've never seen this work well, but we're counting on you to wrestle each other to the ground. I understand. Okay. We'll do it. We'll see how it goes. Counsel, please proceed. Thank you again, Your Honor. I would suggest, please, that we spend our time this morning looking at two things in particular. One is this court's decision in Coleman against Estes Express, and two, Judge Dew's order, the trial court's order. I think we can, just by comparing those two things, we can resolve the question that's most important, perhaps, here today for this court, is whether this case should be in the federal system at all. You're talking about the local exception? Yes, Your Honor. I'm talking about whether the case should be remanded to the place where it originated, which is a state court in Nevada. Now, we know, just looking at the case, at a glance, that this is not the type of case that Congress was concerned about when CAFA was enacted. This is not a billion-dollar tobacco class action in a justice court outside of Mobile, Alabama, that's being certified nationally. Okay, this is a case involving all Nevada citizens in Nevada, Nevada real properties, Nevada law, the Nevada Financial Institutions Division, and their governance over collection agencies and the licensing process. Yes, Your Honor. You're arguing logic, but very often what the Congress does is not very logical, and . . . Nothing to say about that, Your Honor. Yes. Everyone's stipulating to that. I'll say, yay. And what we really have to do, instead of, it seems to me, looking at sort of the gut reaction, is to look at what they require to be shown to be a state action, which . . . I think so, too. So that takes us to the trial court's order and this Court's opinion in Coleman against Estes Express. Yes. And I think . . . Let's look together, please, at the trial court's order, where she begins her analysis, and under the heading of the word analysis, it's page four of the trial court's order, regarding her conclusion that Meridian is not a significant defendant. She does a number of things there that are just not consistent with Coleman. She makes a number of conclusions that are not supported by the pleadings, and she seems to kind of reverse the analysis that this Court put in place when it applied the law in Coleman. Now, remember, Coleman . . . this Court did not have to take Coleman. This was a discretionary review under the statute. This Court elected to take Coleman. It was not a mandatory appeal. I assume it did so to lay out the law in the Ninth Circuit and help the trial courts figure out how to manage this issue. You say that we elected . . . what did we have, a writ of certiorari or something? It's similar. I wish we did, but we don't. It's similar under this statute. I can read it, but it's somehow discretionary if the Court wants to take . . . You're talking about on an interim basis. You mean like some kind of a collateral proceeding? Is that what you're saying? It was one of those CAFA appeals. Oh, I just don't know what CAFA . . . that's what you mean is by CAFA, but . . . Yes. It's under CAFA, so . . . The problem I have with Coleman is towards the end of it, there's about going back and patching things up with an amendment that's pretty obvious dicta. It's what, Your Honor? It's pretty obviously dicta. Well, I don't think so. I'll tell you why. It's a dicta of a different sort. I think it's giving guidance to the trial judges. How are you going to handle this? That's not what we do. We don't give guidance. Well . . . It's dicta or it's holding. Dicta of a different sort. That sounds like a novel. Well, let me explain. You held that you can only look at the complaint to determine whether this is a significant defendant. But that's not what Coleman says, and you like Coleman. Pardon me? I said that's not what Coleman says. It doesn't say . . . And you like Coleman. It says that we can indeed consider extrinsic evidence with respect to the questions of CAFA jurisdiction. As to citizenship. Coleman says. As to citizenship, but not as to the significant defendant question. Well, that's . . . It's . . . No, Your Honor. Maybe we read it differently. Okay. Well, I apologize. I thought it was clear that as to the issue of citizenship, you can look at the extrinsic evidence and even conduct discovery. But as to the significant defendant analysis, it's determined solely from the complaint. In my reading . . . Your point is that because we held . . . we're limited to the four corners of the complaint, you should have been granted leave to amend. Precisely so. So that's the way I read it. The court was saying, listen, we just held today, you can only look at the complaint, but this was in state court. The information may not even be in the complaint. Why would it be there if you intended to be in state court? Why would you have pled information that's necessary to make the CAFA determination on significant defendant? So you may need another chance. Okay. So I'm with you. I'm with you on that part. That's pure logic. Okay. But, so let's take what you've alleged in the . . . is it the second amendment complaint? I would suggest we look at the second, but the trial court refused to do so. I know. I know. I know. And maybe you're right that that was error. So let's look at what's in the second amendment complaint. Yes, please. And explain why, under what we've said in Coleman, you think what you've now alleged is sufficient to qualify you under the local controversy exception. Very well. Thank you. When you're doing that, just to add to what my colleague said, explain how SPARTA Surgical Corp. versus NASD fits into that in terms of which complaint we analyzed, the first or the second amended complaint. I'm not sure I follow the question in terms of whether . . . In other words, SPARTA says jurisdiction has to be analyzed on the basis of the pleadings filed at the time of removal with respect, with reference to subsequent amendments. In other words, you don't look at something that would be filed after a motion for removal is filed. Well, that's inconsistent with Coleman, but also that rule needs to be clarified. What you do is you look at the facts that existed at the time of removal. So if an amended pleading is just stating facts that existed at that time that were not there, of course, because you originated in state court, then that rule is not prohibitive here. These aren't new facts. They're not change developments. They're not like in Doyle, the procuring opinion issued by this court where there was a change in the parties. This is not . . . there's nothing that has changed factually after the date of removal. We just never got the opportunity to allege what the facts were at the time. You knew, of course, the requirements for what has to be alleged in order to provide the relief you're looking for, right? In other words, your point is you can't go outside the complaint in most instances to find evidence, but under the pleading rules, you've got to put enough in the complaint to make sure that the district court can see that this is a local situation and fits into that exception, right? Yes. In a perfect world, that vision would be . . . It's not a perfect world. Correct. I had to tell you, but that's true. Oh, I agree. I mean, when we put this complaint together, frankly, we didn't anticipate CAFA removal. If we did, it would have been in there in the first instance. But the authorities still, including the direction that we perceive to be given in Coleman and the logic of Coleman, tell us . . . and let me now answer your question, if I may. Coleman is really strong. Coleman says there's nothing in the complaint that shows that the one Estes defendant is a nominal defendant. Coleman says that injunctive relief was requested against that defendant, and that is significant. That's all in our first and second amended complaint, Your Honor. We asked for injunctive relief from Meridian and all the defendants. We asked for disgorgement of all their profits from all the defendants. As to Meridian in the second amended complaint, paragraph 15, we allege that Meridian conducted thousands of foreclosures illegally, without a license, collecting debt illegally, without a license, for thousands of homes, against thousands of class members in the State of Nevada. That's in paragraph 15. We quantify it. We estimate, in paragraph 15 of the second amended complaint, that they obtained illegal fees between five and eight million dollars. That's not small change, even in . . . that's from the congressional record, Your Honor. I've read someplace in these massive papers that you sent to us that they only foreclosed on four homes. I don't understand why the trial court . . . I don't want to be pejorative, but the trial court was just looking at the class reps. She just ignored that these are thousands and tens of thousands of foreclosures. So she was just looking at the named plaintiffs. And she said that although Meridian was involved in five of eleven, which is almost 50 percent by my calculation, she said that was not a significant proportion. I thought you said four. I thought she said five in her order. Let me look at it. Five out of eleven, I believe. Okay. Four or five won't matter to the . . . I thought it was four also, but what she's doing is looking only at what's alleged, not what this might be if you'd added everything that happened up in Nevada. Well, not so, Your Honor. The first amendment complaint makes clear this is a class action involving thousands and thousands of collection activities in connection with thousands of foreclosures throughout the state. It was the foreclosure capital of the nation on a per capita basis. No. We all know that. I know. But we're just going to look at Meridian now. Okay. Let's do. Meridian . . . And we've said . . . And the allegation is she indicates they only had four foreclosures, and she says that's not a big player. That's just not true. What she's saying is there were four plaintiffs that were foreclosed upon by Meridian. Do you follow me? Yes. Not four foreclosures. We've said in our second amendment complaint, and it's fairly stated in our first, there were thousands and thousands of foreclosures. Now, do we know exactly how many Meridian did? No. Because we haven't had discovery, but we've estimated that amount based on data and research that we've done through available databases, public databases, we have estimated that amount, Your Honor, in the second amendment complaint, paragraph 15. For purposes of removal consideration, are we to consider this class as a certified class in terms of our analysis, or do we just treat it as whoever the named plaintiff saw her for the time being? Now, I know from your perspective, it should be a class and go from there, but am I mistaken? I didn't think the court had certified a class at this point. There's been no certification. I don't think that comes into play. I've not seen any CAFA case that turns on whether there's been certification or not. You take the allegations as true, it's presumed to be a class, in this case, involving thousands and thousands of class members. For purposes of CAFA removal, that we are to treat the class allegations as true, in terms of determining whether or not there's a local exception here. That was not a contention, Your Honor, so I don't have that. I'm just asking you. No, I don't. Off the tip of my, I do not, I can respond by indicating that we know there's a $5 million requirement, right? By Congress, it's a $5 million minimum, so unless you looked at it on a class basis, I would, frankly, suggest that there'd probably be no class action. If you've got, what, a handful of class reps, how would you ever have $5 million in damages just based on looking at the class reps alone? Let me ask a question. Yes. The dictate that's in Coleman, did your case turn on that? That is, suppose we decide that we're not going to follow the dicta, and we're going to go along with the Fifth and Seventh Circuit, not cause an inner-circuit conflict over something as important nationally as this issue, and so we're going to only look at the complaint as it existed when it was removed. What would be your argument then? Then it's still a slam-dunk under Coleman applied even to our First Amendment complaint. Because we've asked for injunctive relief, this Court found that pretty much definitive in Coleman. There's nothing in our complaint that shows affirmatively that Meridian is a nominal defendant. That's the way the analysis was done in Coleman. Reed Coleman, I can quote several places in Coleman, that the trial court here did the exact opposite. She made all the presumptions against Meridian being a significant defendant. Let me read some of her comments. She injected standards that don't exist anywhere in the statute or in any case. She for example said, interestingly, she even said that it would appear if none of the defendants are significant. That's page 7 of her order, line 13. She said, nothing in the First Amendment complaint demonstrates that Meridian played a role in thousands of foreclosures. Under Coleman, it's the opposite. There would have to be something in the complaint which demonstrated that Meridian was insignificant. That Meridian was small change. That Meridian was minor. She reversed that analysis. Counsel, in... May I... I'm sorry. Sure, go ahead. Page 8 of her order, she says Meridian's conduct does not form a significant basis of the entire set of claims. Plaintiffs do not allege a systemic, systematic, excuse me, policy or practice of Meridian's that affected all or most or many of the plaintiffs. Where is that required in the statute? Where is that in Coleman? Well, it's not in Coleman, but it's in the legislative history of CAFA. And I'll read you the part that troubles me the most for your case. It's in the Senate report, and it says in order for a defendant to be significant within the local controversy exception, the defendant must be a target from whom significant relief is sought by the class as opposed to just a subset of the class membership. And I thought you had said in your pleadings that Meridian was only, you know, only implicated maybe of what, a fifth of the class membership? Well, what you have here, and we have to look at the complaint carefully, you really have independent classes here because you've got class representatives who represent groups that were subject to collection by each of the defendants individually. So it, although I don't think subclass is the proper word, you really have multiple classes in this case. So if you look at the Meridian group, it is the sole target of all those thousands of individuals who suffered illegal debt collection by Meridian. So you've got, right now, you've defined just one massive class as against, I don't know, what is it, five different defendants? And you're saying that each of them really forms its own, you don't want to call it a subclass, but that's in effect what it is as you framed it? I agree, Your Honor. It's more a bundling. If you look at the pleading, that's the only way it could be certified anyway. I can't, I'll have to make a certification motion as against each defendant. It's not one certification motion. I have one last question for you because your time's up. In your Second Amendment complaint, you say that the volume of files that were subject to illegal debt collection of agency activities by Meridian is estimated to be about 15 to possibly 20% of the total illegal debt collection activities by all defendants that are subject to this complaint. So by your own language here, it's 15 to 20%. Could the district court, should the district court have taken that into consideration? Absolutely. And I think that's significant as a matter of law under Coleman. I mean, Coleman says it's significant enough if you're asking for injunctive relief. Remember, if we get an injunction that stops them, they're out of this business unless they go to the financial institutions division and get a proper license. So the injunctive relief by itself is significant. You add in the dollar figures from those figures, I don't know if that's a calculator, Your Honor, but we're talking, you know, we're talking eight figures. But basically, as Judge Wallace indicated, it sounds like the horse you rode in on is on, right? Yes. Coleman is everything. Yeah, I think it ends the analysis. I don't think there's any way to look at the district court's order and find it to be consistent with Coleman, whether you look at the First Amendment or the Second Amendment. For example, she says, there's nothing in the complaint. I think we get your point. Very well. Thank you very much. Thank you. All right. Now we're going to start with the defendants and see how this works. May it please the court, Larry Scarborough again. Let's try a new jockey on Coleman to continue the metaphor. I think the court had Coleman exactly right because one starts from the legislative history and works up through Coleman on the fundamental question of what is significant relief under Double A? What is significant conduct under Double B? Whether it's Coleman, which of course reached a different result, looking at the language it says emanating right from the legislative history that the court quoted to my adversary that relief needs to be sought against that significant defendant from most, if not all, of the class. Here, by definition, whether it's counted on the First Amendment complaint where we get the 4 or 5 out of 11 homes, or in the Second Amendment complaint, which our position quite clearly is, it ought not to be considered. Let me stop you there because you interjected it. I'm looking at the last paragraph of Coleman, and I don't see how the statement you just made can be reconciled with that last paragraph. Well, Doyle, the case we supplementally cited to the court a week ago, makes that exactly clear that the subsequent attempt to amend by virtue of a Second Amendment complaint is not to be considered. So what we have is much more recent law from this court on that point. Hang on. But if we were to adopt that as a strict rule, it seems to me what we would be saying to the plaintiff's bar is that every time you file a class action in state court, you have to preemptively anticipate every single possible exception to CAFA that exists because if you, your clients, remove, they're not going to be given an opportunity to flesh out the rest of the allegations to show that an exception might apply. And Coleman, I think exactly rightly, says if we're going to limit the plaintiff to just the four corners of the complaint, at the very least they have to be given an opportunity to amend once they're in Federal court. So two responses to that, Your Honor. First, as the Court has already pointed out, we're well along under CAFA and many class actions are pledged specifically to, from the outset, from the very first complaint, not to mention a First Amendment complaint, to avoid Federal jurisdiction based on affirmative pleadings relating to the amount of controversy, the number of plaintiffs, et cetera. Second, our argument doesn't depend on Coleman. I absolutely concede that I can see the same dicta that's been raised by every member of this panel. But the key point is, take a look at the Second Amended Complaint. It turns out that Meridian, the only in-state defendant, is actually less significant under the computations that can be made under the Second Amended Complaint than it was under the First. There you've got something like 6 out of 18 homes, 7 out of 20 plaintiffs, and no matter how one slices it, that doesn't approach the touch-tone language of most, if not all, of the class. I think it's crystal clear under CAFA when we're analyzing local controversy exception, we're not focused on the named plaintiffs, as you were just trying to suggest. We're focused on the entire class as alleged in whatever pleading we're looking at. In the Second Amended Complaint, the plaintiffs have quite explicitly said that they're seeking, I don't know, what is it, 15, 20 percent of the overall relief they're seeking comes from Meridian. Right? It's some $5 to $8 million is what they've now told us. So it would independently meet CAFA's $5 million threshold just on its own. And if I understand your argument, you're basically saying, well, 15 to 20 percent, that's not enough to make you significant. Right? Is that your point? Not under any of the law, and certainly not under the legislative history that the Court read to my opponent. I can go into that. No, I want you to. But let me just suggest this. The other circuits so far have adopted this comparative approach, right? And I guess my problem with that is that let's say, I'm not going to be able to do the math right, but let's say there are four defendants and the plaintiffs seek 25 percent relief from each of them. So is your position, well, I guess none of those defendants is significant. Would that be the conclusion? It is absolutely possible under the local controversy exception, which is to be construed narrowly from the legislative history, that you could have an array of defendants, one local and a number from out-of-state, and none could be a significant defendant as that term is contemplated to be used in determining the local controversy exception. There's nothing in the statute, the legislative history, or anywhere else that says that this Court is required to make a finding as among the defendants as to which is the most significant. The touchstone is, is there a local defendant that is significant to warrant a finding under AA, and then you can move on to conduct under BB, to invoke the exception to the rule and where the Court has jurisdiction, there's no question here the Court has jurisdiction, whether under the statute it is to decline that jurisdiction because of a properly pled, properly presented local controversy exception. And here, their burden, first amended complaint or second amended complaint, one can take one's pick. There simply is not a local defendant who is significant under the legislative history, the Coleman decision, the Doyle decision of this circuit. I read the one part of the legislative history that's most favorable to you, but there are many more places in the legislative history where Congress basically says a significant defendant is basically a real defendant, a non-nominal defendant, right? It's basically just saying, we're not going to let the plaintiffs defeat your client's desire to be in federal court by just throwing in some sort of nothing defendant. And it seems to me, if you're asking for 15 to 20 percent of the overall class relief from a defendant, that's far more than a mere nominal defendant in the action. Well, on a proper case, it doesn't mean they can't recover. It just means that the case should proceed in Federal court as opposed to State court. And I would say, not in jest to the Court's serious question, that the portion of the legislative history that was read isn't just the most favorable to our position. I concede that. It is the most apt, because it's the portion that says that a significant defendant, go back to the product liability scenario that is in that example, what it says is, you have a number of dealers who are local defendants, and you have a defect in a manufactured automobile. The relief as a whole, which is what AA concerns, is going at the manufacturer, not the particular dealers who, by definition, only sold vehicles to some portion of the class. That's very apt to the issue that we have here. While the Court didn't discuss it, I did want to say before I sit down, unless there are other CAFA-related questions, just a word about the dismissal on the merits. Can I ask you one little quick CAFA question? Of course, Your Honor. Does it, what difference, if any, does it make that Meridian is the only Nevada defendant here? Does it make a difference? Well, sure it does in the sense that if you move to BB and the conduct prong, you're taking a look at the conduct against the array of out-of-state defendants, of which there are multiple defendants, versus just Meridian. And on that basis, as Judge Duke correctly concluded, what we have is a wave of similar foreclosure activities, many of which, the lion's share of which, were undertaken by entities that are out-of-state as opposed to in-state. So that's where that becomes relevant. In the last minute and a half, what I wanted to say about the merits is this is a straightforward statutory interpretation question concerning Nevada law, concerning a statute that's now been amended. But the key point here is who is a debt collector? And it's not an entity engaging in non-judicial foreclosure activities. And the reason we can say that we feel with some confidence is because if one tracks down the subsections of the key statute, one can see that an attempt to foreclose a lien by a community manager is absolutely something that sweeps one in within the ambit of a debt collector. So the Nevada legislature quite clearly knew how to bring such activities within the sweep of that statute had they wanted to do it. That's why the dismissal on the merits is warranted. And now, within my 10 minutes, unless there are other questions, I can successfully pass the baton. An amazing thing. Thank you. Thank you. May it please the Court. I am Kristen Schuler-Heinz. I'm with the law firm of McCarthy & Holthus, and I'm here today on behalf of Quality Loan Service. The issue of whether or not Quality Loan Service is required to have a debt collector's license in the State of Nevada has already been decided, and the decision of the regulatory agency of the State of Nevada should be respected. On January 3, 2013, the 8th Judicial District Court for the County of Clark issued its decision specifically holding that as a matter of law, Quality Loan Service was not required to be licensed as a debt collector. That decision stemmed from the appeal of an administrative action between the Financial Institutions Division, represented by the Office of the Attorney General for the State of Nevada, and Quality Loan Service. The Honorable Timothy Williams, after reviewing the complete administrative record, the briefs of amicus curiae, and the arguments of counsel, held that Quality Loan Service, as a foreclosure trustee, was not a debt collector and was not required to be licensed as a debt collector in the State of Nevada. Is this, from your perspective, I don't know whether it would be res judicata or collateral estoppel, or what is it as far as this issue? In other words, I do, of course, agree, but were it to go back to the State Court, you're saying it's done, right? It's already been heard? I think it's done because the administrative agency had the opportunity to appeal that decision and they didn't. They could have sent it up to the Supreme Court and said, we want a final determination on this issue. They didn't. It's also important to note that the statute was amended. When they amended that statute, they set out a laundry list of requirements to be a foreclosure trustee. Debt collection licensing was part of that list. They could have said, you must be licensed. That's why I don't even understand why you guys want to be in federal court. Why don't you just go back to State Court? It seems so strange that I see defendants just dying to get into federal court to litigate these state law issues that we have no expertise in, and now you come up here and say, hey, there's this state body that's already ruled in our favor. Well, then stay in State Court and win there. I don't know why you're coming to us. I'm only one of a number of defendants in this, and I think this case was filed and removed before the State Court decision was done, so I don't think there's a need to go back to State Court because the administrative agency didn't. Just for the record, what is the site on the State Court decision? Is there a case number? You know what? I'm sorry, Your Honor. There is a case number, and I did not bring that up. Can you send us a 28-J letter, of course, copy, opposing counsel, with the full citation to that local decision? Absolutely. It is part of the pleading, Your Honor. I understand. Thank you. I will turn the remainder of my time over to Mr. Reynolds. Very good. Good morning. Richard Reynolds for MTC Financial, DVA Trustee Corps. The statutory—we're only doing statutory interpretation, and the Fair Debt Collection Practices Act is only utilized because no Nevada Supreme Court case that's published has talked about it. But as all the court knows, that nonjudicial foreclosure is what is going on in the Ninth Circuit. California law is very similar to Nevada. Arizona is almost identical, except that they don't have a notice of default. So, right now, we have the Ninth Circuit case of Zinni v. White, which was 565 Appendix 613 last year, where the Arizona case—the Ninth Circuit panel said that substitute trustees, which is what our client is, because when somebody makes a loan, they have—it's a preprinted form, and they've got somebody, the trustee, brought in at the whim of a lender and taken out at the whim of a lender. You usually don't even know you're put in, do you? Unless somebody actually initiates an action. And so, it's not collecting a debt, the Ninth Circuit. That is, to my knowledge, the only case that is clearly held at the Ninth Circuit level, that nonjudicial foreclosure activity—in other words, doing something the state required, such as sending out the notices. There's nothing in the original complaint. There's nothing in the amended complaint that states factually, as opposed to a conclusion, that any trustee in Nevada, in these allegations, did anything other than state-mandated foreclosure notices. So, that, I think, has not been addressed. The other thing is, what is the intent of this now-amended debt collection licensing statute? 6490461C states, it is the purpose of this chapter to discourage improper and abusive collection methods. Well, the state of Nevada has already defined what you do to foreclose in a whole different section, in 107. So, as a matter of law, if you do that, it cannot be abusive. It's also not a collection method, because, as we know, particularly in this case, none of these named plaintiffs owe a debt. Their debts were discharged in bankruptcy, every single one. So, the only thing left is foreclosing a lien. And Nevada's defined what is a foreclosure of a lien as 107025, the exercise of a power of sale encumbered by a deed of trust. We're not talking about money. Counsel, is that— So, your argument has nothing at all to do with where this case ends up in the Nevada court or the federal court, what you're saying on the merits you win. That is correct. And Judge Dew briefly talked about the debt collection statute interpretation in the federal system, which is really not— We've got a case here that's focusing on the different issue of whether it's proper to be in the federal court. How would you suggest that we take this and jump right to the merits? Did she do that? Did she make a decision on the merits? She did both, and that is why I'm addressing this. So, this is an alternative decision that the district court made, and you want us to focus on that for the purposes of your case? For the purposes of my argument, and that's why it's truncated between counsel, yes. Okay. Thank you. Okay. Unless any of my colleagues have further questions, we thank you all. Your Honor, would you like to cite the trial court opinion one more year? Yeah, if you'll just send it in for us. Just so we have it. From the 28-day letter. You can have it and give it to who? Yeah, I'll give it to the clerk. That's fine. That's fine. We thank you all for your argument, and the case just argued is submitted.
judges: Wallace, Smith, Watford